146 N.J. Super. 80 (1976)
368 A.2d 983
BROADWAY BANK AND TRUST COMPANY, A NEW JERSEY BANKING CORPORATION, PLAINTIFF,
v.
THE NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided December 1, 1976.
*81 Mr. H. George Avery for plaintiff (Messrs. Cole, Geaney & Yamner, attorneys).
Mr. Richard R. Spencer, Jr. for defendant (Messrs. Stryker, Tams & Dill, attorneys).
DOAN, J.S.C., Temporarily Assigned.
Plaintiff Broadway Bank and Trust Company (Broadway) is a New Jersey banking corporation authorized to conduct an insurance premium financing business in accordance with N.J.S.A. 17:16D-1 et seq., the Insurance Premium Finance Company Act. As part of its operation, Broadway enters into "financing agreements" with prospective insureds. These agreements provide that insureds will repay Broadway the value of all premiums furnished plus finance charges, and that insureds thereby assign to Broadway all rights which they may acquire to any unearned premiums. Premiums are then forwarded by Broadway to a designated carrier, along with printed notice of the financing agreement as well as the assignment.
*82 Defendant, the New Jersey Property-Liability Insurance Guaranty Association (Association), was created by N.J.S.A. 17:30A-1 et seq. effective April 11, 1974, and consists of a private, nonprofit, unincorporated legal entity. The express purpose of the Association is to provide
* * * a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payment, to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers. [N.J.S.A. 17:30A-2(a)]
Gateway Insurance, of Pennsylvania (Gateway) has conducted itself as an insurance carrier in New Jersey until its insolvency was declared on August 21, 1974 by the Commonwealth Court of Pennsylvania. On August 28 of the same year James J. Sheeran, Commissioner of Insurance of the State of New Jersey, was appointed as Gateway's ancillary receiver in New Jersey.
The Joint Underwriting Association (JUA) was created by N.J.S.A. 17:30B-1 et seq., effective September 19, 1974, for the express purpose of
* * * avoid[ing] financial loss to and to reduce financial burdens on claimants and policyholders because of the insolvency of insurers, to authorize the creation of special underwriting associations to assume certain obligations of insolvent insurers and to continue, without interruption and without additional cost, coverage for claimants and policyholders who transfer their rights for unearned premiums from the said insolvent insurers to said associations, and to provide a means by which the cost of such coverage can be equitably assumed. [N.J.S.A. 17:30B-2]
Pursuant to its financing agreements, Broadway forwarded insurance premiums to Gateway prior to the latter's insolvency on August 21, 1974. Thereafter, notice was given to all policyholders, creditors, obligees and claimants of Gateway by the ancillary receiver that all Gateway insurance contracts and policies were cancelled as of September 21, 1974, unless they had otherwise expired before that date. *83 Notice was also given by the Commissioner that due to Gateway's insolvency, the Association had become obligated to the extent of certain covered claims incurred 30 days before or after the date of insolvency. Broadway now seeks to recover from the Association as a covered claim the unearned insurance premiums it had previously forwarded to Gateway.
Plaintiff moves for partial summary judgment urging that its claim against defendant for unearned insurance premiums previously paid the insolvent Gateway falls within the definition of "covered claim" as set forth in the New Jersey Property-Liability Insurance Guaranty Association Act (the Guaranty Act), N.J.S.A. 17:30A-5(d).

I
The first issue presented for determination is whether plaintiff's claim for unearned premiums constitutes a "covered claim" within § 5(d) of the Guaranty Act. This section provides that
"Covered claim" means an unpaid claim, including one of unearned premiums, which arises out of and is within the coverage, and not in excess of the applicable limits of an insurance policy to which this act applies, issued by an insurer, if such insurer becomes an insolvent insurer after January 1, 1974, and (1) the claimant or insured is a resident of this State at the time of the insured event; or (2) the property from which the claim arises is permanently located in this State. "Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, except for any Special Joint Underwriting Association within the meaning of the Joint Underwriting Association Act (N.J.S.A. 17:30B-1 et seq.), as subrogation recoveries or otherwise. [Emphasis supplied]
It is thus apparent that a claim for unearned premiums can represent a "covered claim" assertable against the Association under certain circumstances, leaving the narrower question of whether plaintiff's present claim so qualifies.
*84 Plaintiff contends that as of August 21, 1974, the date of Gateway's insolvency, it became entitled to the return of all insurance premiums previously forwarded to Gateway which became unearned by virtue of the September 21, 1974 cancellation of Gateway policies. Since these premiums were not fully used to provide the coverage intended, both legal and equitable principles necessitated their return. To support this proposition plaintiff cites the Insurance Premium Finance Act, N.J.S.A. 17:16D-14(a):
Whenever a financed insurance contract is cancelled, the insurer on notice of such financing shall return whatever gross unearned premiums are due under the insurance contract to the premium finance company for the account of the insured or insureds within a reasonable time, not to exceed 60 days after the effective date of cancellation, or 60 days after the completion of any payroll audit necessary to determine the amount of premium earned while the policy was in force. Such audit shall be performed within 30 days after the effective date of cancellation.
Having thus demonstrated its right to recovery of unearned premiums against Gateway, plaintiff then argues that it is entitled to a similar recovery from the Association which the Guaranty Act placed in Gateway's shoes. Offered as support are the court's comments in N.J. Prop.-Liab. Insur. Guar. Co. v. Sheeran, 137 N.J. Super. 345.
In the event of a member-insurer's insolvency, the Association becomes liable for substantially all claims against the insurer by New Jersey claimants and policyholders that are incurred prior to or within 30 days after the determination of insolvency. N.J.S.A. 17:30A-8 (a) (1). * * *
Statutes are to be interpreted in the light of their purpose and logic. 2A Sutherland, Statutory Construction (4 ed., Sands 1972), § 45.05; Horwitz v. Reichenstein, 15 N.J. 6 (1954). Section 2 of the Guaranty Act expressly states its purpose: to avoid "excessive delay" in the payment of claims and to avoid "financial loss to claimants or policyholders because of the insolvency of an insurer * * *." N.J.S.A. 17:30A-2(a). The act further provides that it is to be "liberally construed to effect the purpose under section 2 which shall constitute an aid and guide to interpretation." N.J.S.A. 17:30A-4(a). To fulfill these objectives, the act must be interpreted to protect policyholders and claimants and to advance their interests *85 rather than the interests of the Association. If the Association's interpretation were adopted, it would disserve the purpose of the act. It would cause, rather than hinder, "excessive delay" in the payment of claims, * * *. [at 348, 351]
In response, defendant contends that a claim for unearned premiums asserted by an insurance premium finance company is not a "covered claim" within § 5 (d) of the Guaranty Act because they "do not arise out of the coverage offered by the insolvent insurer." In support of this proposed distinction defendant cites the unreported New York decision of O'Connor v. N.J. Prop.-Liab. Insur. Guar. Ass'n, (Sup. Ct. Spec. T.), denying the petitioner's right to recover counsel fees from the Association for representation provided Gateway prior to its insolvency as not constituting a "cover claim" within § 5(d). There the court stated:
By virtue of [§ 5(d)'s] definition of "covered claims" recovery may be had from the Guaranty Association only for claims arising out of the coverage offered by the insolvent insurer, i.e., a claim by an insured under his policy or by a claimant against an insured for a loss covered by the insured's policy.
Defendant then contends that unearned premiums do not "arise out of the coverage" of an insurance policy, but instead constitute administrative adjustments rather than "covered claims." This contention is unacceptable for two reasons. First, unlike the attorney's fees involved in O'Connor, supra, § 5(d) of the Guaranty Act expressly provides that "covered claims" can include a claim for unearned premiums. Secondly, as noted in Sheeran, supra, the Guaranty Act makes the Association liable for substantially all claims against insolvent insurers by claimants and policyholders, and that the interests of claimants and policyholders must be elevated above those of the Association in interpreting the act. Accordingly, it must be held that plaintiff's claim for unearned insurance premiums previously paid the insolvent Gateway falls within the definition of "covered claim" as *86 set forth in § 5(d) of the Guaranty Act and is actionable against the Association.

II
The next issue for determination is whether plaintiff, as an insurance premium financer and assignee of insureds' rights to recover unearned premiums, can invoke the provisions of the Guaranty Act and recover for covered claims. Plaintiff contends that there has been an assignment for consideration of all unearned insurance premiums of which Gateway, and now the Association which stands in Gateway's shoes, had been properly notified, thus entitling plaintiff to recover under the Guaranty Act. In support, plaintiff argues that in Spilka v. So. Amer. Managers Inc., 54 N.J. 452 (1969), recognition was given to the enforceability of an assignment of unearned insurance premiums made pursuant to a financing agreement. There the court remarked:
It is equally elementary that, upon cancellation of an insurance contract by either party to it, the obligation rests on the insurer to pay the insured the unearned premium called for by the terms of the policy. [at 464]

* * * * * * * *
We are of the opinion that the appropriate basis of [plaintiff's] recovery is as the insured's assignee of the return premiums. There can be no doubt that the assignments were for a valuable consideration. As such, [plaintiff] became vested with all choses in action of the assignor and, as a so called equitable assignee, with all monies that might become due. [at 462]
In response, defendant contends that plaintiff is not entitled to invoke the recovery provisions of the Guaranty Act for several reasons. First, it is alleged that defendant was neither a signatory to any financing agreement with plaintiff nor the recipient of any premium benefits provided pursuant to any agreement; second, that while individual policyholders may have a legitimate claim against the Association for unearned insurance premiums, plaintiff, as a commercial assignee involved in a profit-making venture, is *87 not within the intendment of the Guaranty Act's protection. Defendant further points out that since it is funded by assessments from its members which are ultimately passed on to the public in the form of a surcharge, it would be inequitable to assess individual insureds to pay debts and interest charges owing to a commercial banking institution. The distinction proposed by the Association to deny plaintiff recovery is specious and must be rejected. As fully set out above, § 5(d) of the Guaranty Act makes no mention that one invoking its protection must be an individual claimant or policyholder as opposed to a corporate commercial one. This silence stands in glaring contrast to the express exclusion of certain institutions, such as reinsurers and underwriting associations, contained in the last sentence of § 5(d). Had the Legislature intended to differentiate between individuals and commercial assignees it would have done so expressly. When taken along with the instruction in Sheeran, supra, that the Guaranty Act be liberally construed to effect its purpose of protecting claimants and policyholders from loss due to insolvent insurers, the silence of § 5(d) as to the distinction proposed by defendant necessitates its rejection.
Lastly, it must be noted in passing, that Broadway's original contention that refunds of unearned premiums made by the Association presented grounds for estoppel, has been withdrawn. It appears that certain premium refunds were made instead by the JUA, a separate legal entity whose actions are not binding on the Association. As to the whole broader question of what, if any, Gateway policy obligations were assumed by the JUA, thus affecting the recovery of unearned premiums in certain cases, is not presently before this Court.
Plaintiff's motion for partial summary judgment that its claim against defendant for unearned insurance premiums previously paid the insolvent Gateway falls within the definition of "covered claim" as set forth in § 5(d) of the Guaranty is granted.