OPINION OF THE COURT
Harold Hyman, J.
The novelty of this action lies in the necessity for legal interpretation of certain phraseology heretofore not legally defined or interpreted in this State. The action was submitted to this court upon an agreed statement of facts.
The action is one to recover $23,143.20 plus interest, from defendant based upon a group accident and sickness policy *44 providing for major medical expense benefits issued by it on March 28, 1960, as amended by various riders covering the employees of the employer.
Plaintiffs decedent, Alan Greenspan, was an employee of a firm of certified public accountants which had obtained the afore-mentioned policy from defendant covering, and for the benefit of, their employees. During his employment, and while the policy and riders were in effect, Alan Greenspan became ill; he died on September 11, 1973 in Lenox Hill Hospital; he had been admitted as a patient on May 19, 1973 in said hospital and remained there for a period of 115 days.
During his stay at the hospital he required blood, the charge for which totaled $28,929; this not only included the blood itself, but also the processing fee of the hospital therefor.
The policy and riders thereto issued by defendant, is known in present day parlance, as one for major medical coverage.
The basic policy was issued on March 12, 1960, effective as of February 18, 1960; it contains the following provision:
"Article II — Benefits
"Part EDMX — Major Medical Expense Benefits — Employees and Their Dependents.
"If an insured employee shall necessarily incur medical expenses, as herein defined, (a) on account of himself * * * in connection with * * * sickness * * * and such medical expenses incurred * * * shall exceed the Deductible Amount * * * the Company will pay to the employee * * * Eighty _per centum of the amount of such excess medical expenses incurred during such Benefit Period * * *. The provisions of this Part apply only to expenses incurred while the Employee * * * is covered under this Part * * * An expense or charge shall be deemed incurred as of the date the service is rendered or the purchase is made from which the expense or charge arises. ” (Emphasis supplied.)
On December 31, 1963, effective as of February 18, 1964, the policy was amended by a rider adding article IIA, which, in part, provides: "Section B. Definitions
(3) "The term Allowable Expense’ as used in this Article means any necessary, reasonable, and customary item of expense at least a portion of which is covered under at least one of the Plans covering the person with respect to whom claim is made.
*45 "When a Plan provides benefits in the form of furnishing services or supplies rather than cash payments, the reasonable cash value of each service or supply furnished shall be deemed to be both an Allowable Expense and a beneñt paid. ” (Emphasis supplied.)
The plan was thereafter again modified on January 19, 1966, effective as of October 1, 1965, but it did not change the provision set forth in the original policy, but rather retained same, reading: "An expense or charge shall be deemed incurred as of the date the service is rendered or the purchase is made from which the expense or charge arises. [Part CME— Major Medical Expense Benefits — Complementary to Medicare —Persons Eligible Under Medicare — Section A]”. (Emphasis supplied.)
The policy was amended in other respects thereafter, time and again, but the above-mentioned provisions were not changed or modified.
There is no issue raised by defendant that between May 19, 1973 and September 11, 1973, the hospital had actually supplied the blood and processing services to the then covered employee, now deceased; nor does defendant raise any issue as to the propriety or reasonableness of the amount charged therefor by said hospital.
The issue raised by the defendant emanates out of the following agreed facts, namely: "That as of February 14, 1974 the hospital sent to plaintiff an itemized statement which included the blood and processing fee charges; and that plaintiff filed a claim for payment benefits under the policy with defendant; and that plaintiff sought privately to have the charges for blood services paid, reimbursed or credited; and that on April 30, 1974 the hospital advised plaintiff that full credit for blood services had been received from the Greater New York Blood Program.”
Based upon the latter facts, defendant refers to the original policy of March 28, 1960, that is, as to the following provision—
"Article II — Benefits (continued) Part EDMX — Major-Medical Expense Benefits (continued)
Medical Expenses Covered
"The medical expenses covered under this Part shall include reasonable charges actually incurred by the Employee”— and contends that even though it agrees that the service and *46 blood was supplied to the employee sometime during his last illness, which illness terminated upon his death on September 11, 1973, that the expense or charge therefor was not actually incurred, because some 10 months after the decedent’s death the hospital credited the amount therefor against decedent’s bill, because of the Greater New York Blood Program having given a blood credit therefor to the hospital. Defendant contends that since plaintiff had not actually paid the item, to allow plaintiff to recover therefor would constitute a double recovery, an unjust enrichment, which would violate public policy.
Nowhere in any of the provisions of the original policy or the numerous riders thereafter executed is there any indication, by definition or otherwise, as to what was meant or intended by the usage of the phrase "charges actually incurred” so as to indicate any real difference in intent by the appendage of the word actually in that isolated clause, which otherwise reads the same as heretofore set forth.
The debt is instantly incurred when the service is rendered; so states the policy itself: "An expense or charge shall be deemed incurred as of the date the service is rendered or the purchase is made from which the expense or charge arises”. (Emphasis supplied.)
Nowhere in the policy or any rider thereto is there any provision that as a condition precedent to receiving payment of the claim there must be actual payment thereof by the employee personally; nor is there any condition precedent therein that there must be payment of the charge or expense in any specific form, either monetarily or in kind; nor is there any exclusionary clause if same not be paid monetarily.
That the incurrence of the expense or charge arises at the very instant the service is rendered by the hospital or it supplies the item, is also settled law (Rubin v Empire Mut. Ins. Co., 25 NY2d 426).
Research of the law of this and other States indicates that even though the actual service not be then (at that instant of time) performed, but had been contracted for (within the time limits of the policy), that such constitutes sufficient incurrence of the charge or expense within the purview of the policy (Maryland Cas. Co. v Thomas, 289 SW2d 652 [Tex]; Drobne v Aetna Cas. & Sur. Co., 66 Ohio L Abs 1). This State has adopted even a more liberal construction, namely, that the word " 'incurred’ * * * must be deemed to include any liability *47 undertaken [within the time limitations of the policy] for reasonable medical services * * * irrespective of the time within which such services are completed” (Whittle v Government Employees Ins. Co., 51 Misc 2d 498, 499; Perullo v Allstate Ins. Co., 54 Misc 2d 303; Farr v Travelers Ind. Co., 84 Misc 2d 189). (Emphasis supplied.)
In Rubin v Empire Mut. Ins. Co. (25 NY2d 426, supra), the court had before it virtually the identical issue — factually an even stronger and more compelling circumstance existed favoring the insurer’s position; therein the insured’s medical expenses had been satisfied out of workmen’s compensation payments, the premiums for which policy had been paid for by his employer. Therein, as here, the defendant also contended that if plaintiff was allowed recovery he would be procuring duplicate payments, a windfall, which should be barred.
The Court of Appeals in Rubin (supra, pp 429, 430) disagreed with defendant’s contentions, stating:
"There has been no construction of the term 'incurred’, in the context of the policy provision before us, in any prior New York case. In other jurisdictions the word has been given the meaning for which appellant contends. In point, for example, is Thomas v. Universal Life Ins. Co. (201 So. 2d 529 [La. App., 1967]) [Feit v St. Paul Fire & Mar. Ins. Co., 209 Cal App 2d 825; Hack v Great Amer. Ins. Co., 175 So 2d 594 (Fla App, 1965); American Ind. Co. v Olesijuk, 353 SW2d 71 (Tex Civ App, 1962); Nationwide Mut. Ins. Co. v Schilansky, 176 A2d 786 (Mun Ct App, D. C., 1961)] in which plaintiff recovered under the medical expense provisions, as against the defense that since those expenses had been paid by workmen’s compensation, he had never incurred them, the court holding in effect that inasmuch as the expenses could be charged against the insured, he had incurred them. Certainly, there has to be some period of time between the initial treatment and the establishment of compensation liability and, regardless of who ultimately pays or where the bills are first sent, the insured has subjected himself to liabiilty for payment simply by undergoing the treatment. An older but nonetheless respectable authority, in differentiating between damage suffered and cost or damage incurred, expresses the common view: 'Suffered means paid; incurred means become liable for/ (Beekman v. Van Dolsen, 70 Hun 288, 294.)
"Our construction is aided, and the result reinforced, upon analysis of the nature of the medical expense indorsement in *48 automobile liability policies. 'Since such expense payments are in the nature of health insurance, and payments under such policies are considered to be merely a return of premiums, duplicate payments ordinarily may be secured. Therefore, an automobile insurer may be required to pay the amount of a hospital bill to the insured, even though such bill was in fact paid by the hospitalization insurer. And one is not debarred from recovering such sums even though he may be entitled to include such items as damages in the suit against the tortfeasor, the tort-feasor not being entitled to minimize his damages, as a result of premium payments made by another.’ (8 Appelman, Insurance Law and Practice, § 4896, p. 351.)” (Emphasis supplied.)
There is little doubt that the policy involved comes within the purview of section 162 of the Insurance Law which deals with group accident and health insurance policies. The appendage of the word "actually” to the word "incurred” occurs only once in the main policy in print no larger that of 95% of all other provisions in the full (main) body of the policy and certainly not in any "bold face print”; whereas the phrase "charges or expenses incurred”, minus the appendage of the word "actually” is appended. What is more, the printed policy contains a list of numerous "exclusions”, but nowhere contained in any of these exclusions is there the slightest reference to the necessity of prior payment or as to any payment by the employee being required, or that if payment not be made by the employee that the item would therefore be deemed excluded. Certainly such a prior payment requirement would constitute a reduction as to benefits covered or remuneradle. It can safely be said that any such reduction in benefits would come within the purview of section 162 of the Insurance Law, which, in part requires:
"Group or blanket accident and health insurance policies; standard provisions.
"1. No policy of group or blanket accident or health insurance or accident and health insurance and no certificate thereunder shall * * * be delivered or issued for delivery in this state unless the policy contains in substance each and all of the provisions set forth in the following paragraphs or provisions which in the opinion of the superintendent are more favorable to the holders of such certificates or not less favorable to the holders of such certificates and more favorable to policyholders * * *
*49 "(a) A provision * * * that no change in the policy shall be valid unless * * * evidence by endorsement on the policy, or by amendment to the policy signed by the policyholder and the insurer. * * *
"(3) Any portion of any such policy, delivered or issued for delivery in this state, which purports, by reason of the circumstances under which a loss is incurred, to reduce any beneñts promised thereunder to an amount less than that provided for the same loss occurring under ordinary circumstances, shall be printed, in such policy and in each certificate issued thereunder, in bold face type and with greater prominence than any other portion of the text of such policy or certificate, respectively”. (Emphasis supplied.)
That the policy in question is a group major medical expense insurance policy, is without question. That applying the contention made by the defendant in this case would have reduced the benefits promised to an amount less than that provided for the same loss occurring under ordinary circumstances; that the insuror could have printed such provision "in bold face type and with greater prominence than any other portion of the text of such policy or certificate” is unquestionable; and, that the defendant could have inserted in its policy such a condition or limitation or exclusion is indisputable; that it chose not to do so cannot now militate against the rights of the covered person. (Carlson v Travelers Ins. Co., 35 AD2d 351, 355.)
What is more, the phrase "reasonable charge or expense incurred” has been held to mean to "become liable for” (Rubin v Empire Mut. Ins. Co., 25 NY2d 426, supra; Beekman v Van Dolsen, 70 Hun 288, 294), or "could be charged against the insured regardless of who ultimately pays for such” (Thomas v Universal Life Ins. Co., 201 So 2d 529 [La]). What does the word "actually” add to cause a controversial issue absent any exclusion, limitation, or definition? This court is of the opinion that the appended word "actually” in reality adds nothing and any doubts or ambiguity in the meaning of the verbiage in the policy must be construed against the drawer thereof, the defendant. See Bronx Sav. Bank v Weigandt (1 NY2d 545, 551, 552), wherein it was specifically stated: " 'But insurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ. In a word, they should be so plain and unambiguous that men *50 of average intelligence who invest in these contracts may know and understand their meaning and import’ (Janneck v. Metropolitan Life Ins. Co., 162 N. Y. 574, 577-578). 'The question is simply whether the average man in applying for insurance and reading the language of this policy at the time it was written would ascribe the meaning to that language which the insurance company here urges’ (Hartol Prods. Corp. v. Prudential Ins. Co., 290 N. Y. 44, 50). It is not enough if the applicant might have so construed it, provided it could reasonably be construed otherwise. To sustain the construction urged, the insurer has the burden of establishing that 'the words and expressions used not only are susceptible of that construction but that it is the only construction that can fairly be placed thereon.’ (Hartol Prods. Corp. v. Prudential Ins. Co., 290 N. Y. 44, 49, supra). This it has failed to do. * * * As this ambiguity is attributable to the insurer, it must be resolved against it. (Hartol Prods. Corp. v. Prudential Ins. Co., 290 N. Y. 44, supra; Griffey v. New York Central Ins. Co., 100 N. Y. 417; Darrow v. Family Fund Soc., 116 N. Y. 537, 544; Matthews v. American Central Ins. Co., 154 N. Y. 449, 456; Janneck v. Metropolitan Life Ins. Co., 162 N. Y. 574, supra; Silverstein v. Commercial Cas. Ins. Co., 237 N. Y. 391.)” (Emphasis supplied.)
The word "actually” has been defined to mean "in act or fact”; "as a matter of fact”; "in reality”; "really”; "truly”. (Funk & Wagnalls, New Practical Standard Dictionary [1956 ed].)
Can it be questioned that, since the word "incurred” has been legally defined to mean to "become liable for” or which "could be charged against one”, at a time specifically and unequivocally determined by the very policy in question prepared by defendant — insurer herein, that is: "An expense or charge shall be deemed incurred as of the date the service is rendered” that when the service was rendered to or purchase made by the employee, that such expense or charge was then and there instantly, simultaneously, in fact incurred, as a matter of fact incurred, in reality incurred, really incurred and/or truly incurred by such employee to make him then and there personally liable therefor.
This court can well understand that the defendant might disclaim liability should a fraudulent or spurious claim be made, that is for services or expenses not actually having been rendered or supplied to a claimant, but that is not the case *51 here. Here the charge or expense was actually incurred when the service was rendered, and, if the decedent’s heirs some 10 months later were ultimately able to obtain some third party to satisfy that portion of the claim in their behalf, such manner of satisfaction may not militate against recovery by the employee or his estate. This is so even though payment of the premium for the policy was made by the employer, or satisfaction obtained through another (Rubin v Empire Mut. Ins. Co., 25 NY2d 426, 429, 430, supra).
The plaintiff is herewith granted judgment against the defendant in the amount of $23,143.20 together with interest thereon as demanded in the complaint, plus the costs and disbursements of the action.