The    TERMINIX    INTERNATIONAL
  COMPANY LIMITED PARTNERSHIP,
  Plaintiff–Appellee,

v.

TENNESSEE INSURANCE GUARANTY
  ASSOCIATION, Defendant–
  Appellant.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Aug. 28, 1992.

Application for permission to appeal
Denied by Supreme Court
Nov. 23, 1992.

Jef Feibelman, Holly K. Lillard, Burch, Porter & Johnson, Memphis, for plaintiff-appellee.

William D. Leader, Jr., Charles W. McElroy, Boult, Cummings, Conners & Berry, Nashville, for defendant-appellant.

## OPINION

LEWIS, Judge.

Defendant, Tennessee Insurance Guaranty Association (TIGA), has appealed from the trial court's judgment in favor of plaintiff, The Terminix International Company Limited Partnership (Terminix), in the sum of $199,800.00.

## THE FACTS

This case arose out of two claims for which Terminix sought recovery and for each of which the trial court entered a judgment against TIGA in the amount of $99,900.00. The first claim (hereafter the Manning Claim) arose out of injuries received by Joseph Manning in an automobile accident on 4 September 1985, and the second claim (the Yoo Claim) arose out of bodily injuries sustained by an unborn infant, Linda Yoo, in an automobile accident that occurred on 30 May 1985.

At the time of both accidents, Home Insurance Company (Home) provided Terminix with primary, general liability insurance with limits of $500,000.00.

Also, at the time of both accidents, Integrity Insurance Company (Integrity), provided Terminix with excess liability coverage with limits of $5,000,000.00 in excess of the Home policy limits.

On 24 March 1987, the Superior Court of Bergen County, New Jersey declared Integrity to be insolvent and issued an order of liquidation. Since that date Integrity has been an insolvent insurer within the meaning of the Tennessee Insurance Guaranty Association Act. Tenn.Code Ann., § 56–12–101 et seq.

## MANNING CLAIM

On 4 September 1985, Joseph Manning was seriously injured in an accident in Pennsylvania involving a vehicle owned and driven by an employee of Terminix. Joseph Manning filed a lawsuit in Pennsylvania against Terminix for his injuries arising out of the accident. On 1 December 1987, Manning settled all claims against Terminix for the sum of $750,000.00.

Home insurance Company paid to Manning its policy limits of $500,000.00 as a part of the $750,000.00 settlement and Terminix paid the remaining $250,000.00 as a result of the insolvency of Integrity.

On 8 December 1987, Terminix submitted a claim to TIGA pursuant to the Act for payment of its share of the Manning claim, including a request for discretionary disability payment.

Manning's stipulated medical expenses arising from the accident totaled $44,550.48. All of those medical expenses were paid by Manning's worker's compensation carrier, General Accident Insurance Company. All of Manning's future medical expenses arising from the accident will also be paid by General Accident Insurance Company. General Accident also paid Manning the sum of $31,542.00 in temporary total disability benefits for lost wages. If Manning had not been injured, he would have earned approximately $48,320.00 from the date of the accident to the date of settlement on 1 December 1987. Manning therefore had unreimbursed lost wages of $16,778.00 and no unreimbursed medical expenses at the time of the settlement.

The record does not indicate whether the $500,000.00 that Manning received from Home in the settlement with Terminix was intended to be allocated to his lost wages. However, the payment by Home far exceeded the $16,778.00 in unreimbursed lost wages that Manning had up to the time of the settlement.

## YOO CLAIM

On 30 May 1985, Linda Yoo (Yoo), then unborn, suffered severe injuries in an accident in Delaware involving a vehicle owned and driven by an employee of Terminix.

A lawsuit was filed on 12 May 1986 in Delaware on Yoo's behalf against Terminix for injuries arising out of the accident. TIGA was apprised of the lawsuit.

The Yoo lawsuit was settled with Terminix on 20 June 1989 for a total of $1,400,-000.00. Home paid $500,000.00 of the settlement and Terminix paid the remaining $900,000.00 as a result of the insolvency of Integrity.

As of the date of settlement, Yoo's medical expenses totaled $57,538.37. Of that amount, $37,200.00 was paid by Yoo's health insurance carrier and $15,000.00 was paid by Yoo's automobile insurance carrier. The balance of Yoo's medical expenses, $5,338.37, was paid by Yoo's parents.

As in the Manning case, the record is silent in the Yoo case as to how the $500,-000.00 paid by Home in the settlement was intended to be allocated. There is no evidence that Ms. Yoo's medical expenses since the settlement have exceeded the amount paid by Home.

Linda Yoo has not incurred any lost wages. At the time of the accident, she was unborn and is now only seven years old. Terminix relies upon evidence or testimony that would have been introduced at the negligence trial concerning Ms. Yoo's lost earning capacity over her expected life.

## TIGA DECISION

The TIGA Board of Directors considered the Manning and Yoo claims together. On July 28, 1988 TIGA issued its decision denying both claims. The letter from TIGA informing counsel for Terminix of its decision stated: "The Board's position is that since Integrity was excess in the above cases the medical expenses which have been incurred and the wages which have actually been lost have been paid by the primary carrier. Therefore, there is no unpaid claim from our standpoint."

## TIGA'S STATUTORY OBLIGATIONS

TIGA is a non-profit, unincorporated association which owes its existence to the Tennessee Insurance Guaranty Association Act, Tennessee Code Annotated, Section 56–12–101, et seq. (hereafter the Act). The nature, scope and extent of TIGA's obligations are defined in the Act, which is the sole source of TIGA's rights, obligations and authority. Therefore, the issues in this case turn upon the meaning of the Act and the application of the Act to the facts of the case.

The purpose of the Act was defined by the Tennessee General Assembly as follows:

The purpose of this part is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, and to provide an association to assess the cost of such protection among insurers.

Tenn.Code Ann., § 56–12–102.

Tennessee Code Annotated, Section 56–12–104(4) defines "covered claim" as follows:

4(A) "Covered claim" means an unpaid claim which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an insurer if such insurer becomes an insolvent insurer after April 28, 1975, and:

(i) The claimant or insured is a resident of this state at the time of the insured event; or

(ii) The property from which the claim arises is permanently located in this state.

(B) "Covered claim" does not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.

Tenn.Code Ann., § 56–12–104(4).

TIGA, while obligated to pay "covered claims," is not obligated to pay all "covered claims" in full. Even when a claim is within the definition of a "covered claim," the Act imposes a number of significant and material limitations upon TIGA's obligations and authority to make payment. The "covered claim" must have been in existence prior to the date of the determination of the insolvency of the insurance carrier, or within thirty days thereafter. Tenn.Code Ann., § 56–12–107(a)(1)(A). TIGA's obligation included "only that amount of each covered claim which is in excess of one hundred dollars ($100) and is less than one hundred thousand dollars ($100,000)." *Id.* Therefore, TIGA's maximum obligation on any one claim is $99,-899.99.

Tennessee Code Annotated, Section 56–12–111(a) places an additional statutory limitation on TIGA's obligation and authority to pay claims and is set forth as follows:

Any person having a claim against an insurer under any provision in an insurance policy other than a policy of an insolvent insurer, which is also a covered claim, shall be required to exhaust first his right under such policy. Any amount payable on a covered claim under this part shall be reduced by the amount of any recovery under such insurance policy.

Tenn.Code Ann. § 56–12–111(a).

This section requires an exhaustion of remedies against other solvent insurers and makes TIGA a "guarantor of last resort." *See Ventulett v. Maine Ins. Guaranty Assoc.,* 583 A.2d 1022–23 (Me.1990).

The Act also provides another significant limitation on TIGA's obligation to pay "covered claims" in all cases arising from personal injury claims. That limitation is as follows:

In the case of claims other than workers' compensation arising from bodily injury, sickness, or disease, including death resulting therefrom, the amount for which the association shall be obligated shall not exceed the claimant's reasonable expenses incurred for necessary medical, surgical, X-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services, and any amounts actually lost by reason of claimant's inability to work and earn wages or salary or their equivalent that would otherwise have been earned in the normal course of such injured claimant's employment, to which may be added at the discretion of the association an additional sum as compensation for permanent physical impairment if such payment can be made within the policy limits.

Tenn.Code Ann., § 56–12–107(a)(1)(B).

## THE TRIAL COURT'S DECISION

The trial court placed a great deal of reliance on the following language: "The purpose of [the Act] is to provide a mechanism for the payment of covered claims under certain insurance policies, to avoid excessive delay in payments and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer." Tenn.Code Ann., § 56–12–102.

The trial court also relied upon *Broadway Bank and Trust Co. v. New Jersey Property–Liability Insurance Guaranty Association,* 146 N.J.Super. 80, 368 A.2d 983 (1976) for the proposition that the overriding considerations in interpreting the Act are to protect claimants and policyholders rather than advance the interest of the guaranty association, and to avoid windfalls by not allowing the insured a greater recovery than he or she would have received had the insurer remained solvent.

Using these general propositions, the trial court found that the Act obligates TIGA for future medical expenses and lost wages of Manning and Yoo because these claims are normally covered by liability policies. The trial court determined that Tennessee Code Annotated, Section 56–12–107(a)(1)(B), does not limit TIGA's statutory liability to

medical expenses and lost wages actually incurred, finding that such an interpretation was not likely to have been the intent of the legislature. The trial court cited no case in support of its decision other than *Broadway Bank and Trust Co.*

The trial court found that the "stated purpose" of the Act is best effectuated by requiring TIGA to step into the shoes of Integrity and to reimburse Terminix up to the statutory limits. Tenn.Code Ann., § 56–12–107(a)(1)(A).

■■■■ TIGA's first issue is: "Did the trial court err in failing to limit TIGA's obligation to the amount of medical expenses incurred and wages actually lost, as required by Tenn.Code Ann., § 56–12–107(a)(1)(B)."

Tennessee Code Annotated, Section 56–12–107(a)(1)(B) provides in pertinent part as follows:

> In the case of claims other than workers' compensation arising from bodily injury, ... the amount for which the association shall be obligated shall not exceed the claimant's reasonable expenses incurred for necessary medical, surgical, X-ray and dental services, ... and any amounts actually lost by reason of claimant's inability to work and earn wages or salary or their equivalent that would otherwise have been earned in the normal course of such injured claimant's employment, to which may be added at the discretion of the association an additional sum as compensation for permanent physical impairment if such payment can be made within the policy limits.

The trial court, in commenting on this section, stated: "To limit TIGA's liability to the portion of coverage that relates only to actual medicals and lost wages incurred at the time of filing a claim with TIGA is a misreading of the statute. A liability policy contemplates future medical expenses, lost wages and even punitive damages."

We are of the opinion that finding TIGA's obligation to be limited to medical expenses and lost wages actually incurred is not a misreading of the statute, but is the plain reading of the statute and is the correct interpretation.

■■ What is contemplated by a liability policy is not pertinent to the issue of TIGA's liability under the Act. The Act defines and limits TIGA's obligation without regard to the policy terms. While the underlying policy sets the outer bounds on TIGA's potential liability, Tenn.Code Ann., § 56–12–107(a)(1)(A), the additional limits on TIGA's obligations are not dependent upon policy language, but arise from the language of the Act itself.

Terminix does not actually dispute the argument that TIGA's statutory obligation is limited to payments for medical expenses incurred and wages actually lost. However, Terminix argues that the phrase "expenses incurred" includes future medical expenses and that the phrase "actually lost" in connection with wages includes future wages. We are of the opinion that this argument is without merit.

The language in the Act limiting TIGA's obligation to those medical "expenses incurred" is clear and unambiguous. The word "incur" has a well accepted meaning which is "to become liable or subject to." The American Heritage Dictionary, p. 653 (2nd. College Ed.).

In *Hermitage Health and Life Insurance Co. v. Cagle*, 57 Tenn.App. 507, 420 S.W.2d 591, 593 (1967), this Court held that "incur" means "to become liable for." In *Cagle*, this Court interpreted the word in the context of a provision of a health insurance policy obligating the insurer to pay for expenses incurred and held that medical expenses are incurred when the patient becomes liable to pay for them. *Id.*

Several jurisdictions have held that expenses incurred under an insurance policy means "to become liable for." In *Greenspan v. Travelers Ins. Co.*, 98 Misc.2d 43, 412 N.Y.S.2d 1009, 1011 (1979), the court held that the word "incurred" in a group major medical expense policy referred to the time that the party receiving medical services became liable for payment which was the time that the service was rendered by the provider. In *Reserve Life Insurance Co. v. Coke*, 254 Miss. 936, 183 So.2d 490, 493 (1966), it was held that the word

"incurred" as used in a health and accident policy indemnifying an insured against liability for hospital and surgical expenses actually incurred contemplated expenses for which the insured had become legally liable. The *Coke* court stated as follows: "The term 'incur,' when used in policies of insurance, has a fixed legal meaning. A debt has been incurred when liability attaches." 183 So.2d at 493 (quoting *Stuyvesant Ins. Co. of New York v. Nardelli*, 286 F.2d 600, 603 (5th Cir.1961)). Liability does not attach for services until they are rendered. Anticipated expenses for future medical services have not yet been incurred. Incurred has a plain and well accepted meaning, both in its common everyday usage and as expressly used in the insurance industry. The Tennessee Legislature is deemed to have understood the meaning when it drafted the Act and not to have intended another strained meaning in which "incurred" is interpreted to include projected expenses for services which have not yet been rendered and as to which no liability for payment has yet arisen. Expenses that may be expected to arise in the future have not been incurred and are not within the scope of TIGA's obligation in claims arising from personal injuries.

■ We are also of the opinion that the Act is clear in its limitation of TIGA's liability for lost wages which means wages or their equivalent "actually lost" by reason of the personal injury. It stretches the imagination for one to conclude that the phrase "actually lost" includes wages projected to be lost in the future. We are of the opinion it is a distortion of the language of the Act and is also contrary to the distinction in Tennessee law between lost wages and loss of earning capacity. Loss of earning capacity represents an estimate of diminished ability to earn a livelihood, past and in the future. *Marress v. Carolina Direct Furniture, Inc.*, 785 S.W.2d 121, 123 (Tenn.App.1989). If it had been the intent of the legislature to make TIGA liable for loss of earning capacity as well as actual lost wages, it could certainly have so provided. However, it did not and, instead, chose to limit TIGA's obligation to the payment of wages actually lost.

For the reasons set forth, the judgment of the trial court is reversed and the case remanded to the trial court for the collection of costs and the entry of judgment not inconsistent with this opinion. Costs of appeal are assessed to plaintiff-appellee.

TODD, P.J., and CANTRELL, J., concur.