MARY B. FLANAGAN *vs.* LIBERTY MUTUAL INSURANCE
COMPANY.

Suffolk. January 8, 1981. — March 18, 1981.

Present: HENNESSEY, C.J., BRAUCHER, WILKINS, LIACOS, & ABRAMS, JJ.

*Insurance,* Motor vehicle personal injury protection benefits, No-fault
insurance, Loss of wages. *Statute,* Construction.

The estate of a person who was killed instantly in a motor vehicle acci-
dent was not entitled by G. L. c. 90, § 34A, to recover for lost wages
under the personal injury protection coverage of a policy of motor ve-
hicle insurance. [196-200]

CIVIL ACTION commenced in the Boston Municipal Court
Department on March 26, 1979.

The case was heard by *Canavan, J.*

*John E. Sheehy* for the plaintiff.

*Barbara Savitt Pearson* for the defendant.

WILKINS, J. We hold that a person covered under the
personal injury protection coverage (PIP) of the no-fault
motor vehicle insurance law (G. L. c. 90, § 34A) may not
recover PIP benefits for lost wages when he is killed in-
stantly in a motor vehicle accident.

The case was presented in the Municipal Court of the
City of Boston on a stipulation of facts. The plaintiff was
the owner of a motor vehicle insured for the year 1978 by
the defendant (insurer) for compulsory motor vehicle insur-
ance (including PIP coverage) and certain other coverages,
including medical payments insurance. On December 22,
1978, the plaintiff's husband was killed instantly in a single
car accident while he was operating the plaintiff's vehicle
with her permission. The plaintiff filed a claim under the
PIP portion of her policy for funeral expenses of $1,956.50
(which the insurer paid) and for her husband's loss of

wages.[1] The insurer denied liability for lost wages, and the plaintiff brought this action. The parties agreed that the sole issue was whether the plaintiff was entitled to collect no-fault benefits for lost wages of her husband.[2]

The judge in the Boston Municipal Court ruled that the plaintiff was not entitled under her PIP coverage to recover for her husband's lost wages. On report, the Appellate Division of the Boston Municipal Court agreed with the trial judge and dismissed the report. We agree and affirm the order dismissing the report.

The plaintiff's right to recover for wages that her husband would have earned but for his death must be found, if it can be found at all, in the definition of "personal injury protection" in G. L. c. 90, § 34A, as amended through St. 1973, c. 806, § 4. Although the plaintiff's 1978 motor vehicle insurance policy was attached to the stipulation of facts, it is not included in the report. No argument is made based on the provisions of the policy. We must look to the statutory language, construing it to arrive at the legislative intent.[3] As we noted in discussing the no-fault law in *Mail-*

---

[1] The insurer does not contend that the plaintiff has no right to assert a claim for wages lost by her husband. Personal injury protection benefits are payable to the injured person. G. L. c. 90, § 34A.

[2] The limit of PIP available under the plaintiff's policy was $2,000. See G. L. c. 90, § 34A. The funeral expenses were less, but only slightly less, than $2,000. Therefore, if the plaintiff is correct in her argument, she is entitled to some payment for lost wages. Because of our conclusion adverse to the plaintiff, we need not consider what allocation, if any, might be required between medical payments coverage which, it appears, covers funeral expenses and PIP benefits which generally cover both lost wages and funeral expenses.

[3] The policy, whose form was approved by the Commissioner of Insurance (G. L. c. 175, § 113A), might have purported to resolve any statutory ambiguity. A policy which specified whether recovery of lost wages was limited to lost wages of accident survivors would be entitled to weight as an administrative interpretation of the statute. *Amherst-Pelham Regional School Comm.* v. *Department of Educ.*, 376 Mass. 480, 491 (1978), and cases cited. Because the judge had the policy before him, we would hesitate to disagree with his conclusion without seeing the policy. We may fairly infer that the policy language was no more favorable to the plaintiff, and perhaps less so, than the language of § 34A itself.

hot v. *Travelers Ins. Co.*, 375 Mass. 342, 345 (1978), "[i]n so large a legislative enterprise, there are likely to be casual overstatements and understatements, half-answers, and gaps in the statutory provisions. As practice develops and the difficulties are revealed, the courts are called on to interweave the statute with decisions answering the difficulties and composing, as far as feasible and reasonable, an harmonious structure faithful to the basic designs and purposes of the Legislature."

The basic definition of "personal injury protection" in § 34A appears in a single initial sentence of more than 600 words. As relevant to this case, § 34A states that the PIP provisions of a policy provide payment to members of the insured's household "of all reasonable expenses incurred within two years from the date of accident for necessary medical, surgical, x-ray, and dental services, including . . . funeral services, and in the case of persons employed or self-employed at the time of an accident of any *amounts actually lost by reason of inability to work and earn wages or salary or their equivalent . . . as a result of bodily injury, sickness or disease, including death at any time resulting therefrom*, caused by accident . . . while in . . . the insured's . . . motor vehicle, without regard to negligence . . . or fault of any kind, to the amount or limit of at least [$2,000] on account of injury to or *death of any one person, except that payments for loss of wages or salary or their equivalent . . . shall be limited to amounts actually lost by reason of the accident*" (emphasis supplied). In measuring the wages actually lost of employed insureds, § 34A focuses on 75% of the insured's average weekly wages for the year immediately preceding the accident.

We start with the words first underlined in the statutory language quoted above — "amounts actually lost by reason of inability to work and earn wages . . . as a result of bodily injury, sickness or disease, including death at any time resulting therefrom." The insurer points to the words "actually lost," arguing that a deceased insured does not actually lose any wages. He had no employment from which

wages could be lost. The plaintiff points to the language "including death at any time resulting therefrom" and says that bodily injury causing death at any time includes an injury causing instant death. The language emphasized at the end of the quoted statutory provision reiterates in somewhat different language the point on which the insurer relies — "payments for loss of wages . . . shall be limited to amounts actually lost by reason of the accident."

We attempt to assess the intent of the Legislature in the context of the reasons underlying the adoption of the no-fault law. The no-fault law was adopted to reduce the number of small motor vehicle tort cases being entered in the courts of the Commonwealth, to provide a prompt, inexpensive means of reimbursing claimants for out-of-pocket expenses, and to address the high cost of motor vehicle insurance in the Commonwealth. See *Pinnick* v. *Cleary*, 360 Mass. 1, 16-21 (1971), where these reasons are set forth in a discussion of the rationality of the legislative enactment. PIP coverage for the consequences of the kind of accident involved in this case provided protection where none had previously been available under the compulsory insurance law, a law concerned only with third-party claims. This broadened coverage tended to increase premium charges. Recognizing the legislative goal to reduce those charges, we might fairly respond by construing narrowly the intended scope of PIP benefits with respect to situations in which no third-party claim would be involved. But the Legislature clearly provided, within PIP coverage, for the payment of lost wages of a person who survived such an accident and also clearly provided a funeral benefit for anyone who did not survive. The insurer grants that the plaintiff's husband (or more exactly his estate) had a claim for funeral benefits up to the PIP limit of $2,000. The question remains whether the Legislature intended a death benefit for lost wages (within the PIP limit) in the circumstances involved in this case.[4]

---

[4] At the time the no-fault law was adopted, there was no claim for lost wages or for funeral expenses as to a person killed instantly in a motor

Opinions in other jurisdictions dealing with claims under no-fault laws for the recovery of amounts attributable to the earning capacity of a person instantly killed in a motor vehicle accident provide little assistance. The statutes elsewhere are different in significant ways. Where the statute refers to disability or a period of disability, the courts appear to have held uniformly that a deceased person could not have lost wages because disability contemplates survival. See *Griffin* v. *Travelers Indem. Co.*, 328 So. 2d 207, 210 (Fla. App. 1976); *Perez* v. *State Farm Mut. Auto. Ins. Co.*, 289 Or. 295, 299-300 (1980); *Hamrick* v. *State Farm Mut. Auto. Ins. Co.*, 270 S.C. 176, 181-182 (1978). Our no-fault insurance statute does not refer in so many words to the insured's disability. The Delaware no-fault law, considered in *Ricks* v. *Coffelt*, 369 A.2d 680 (Del. 1977), referred to "loss of earnings" and contained no language barring a claim by the representative of the deceased insured's estate. Recovery was allowed for loss of future earnings. The Massachusetts no-fault law speaks of amounts "actually lost."

Although the point is not free from doubt and, as we have said, might well have been resolved by the provisions of the policy that the plaintiff has not sought to put before us, we conclude that PIP benefits do not include payments for wages and the like that a deceased insured would have earned if he had not died in the accident. The words "amounts actually lost by reason of inability to work and earn wages" contemplate a living individual. Arguably, one who is dead is unable to work, but, in the context of the statute, the common sense meaning of "inability to work" does not include inability due to death. The word "actually," appearing twice in the controlling language, lends support

---

vehicle accident. Our death statute at that time provided for a tort claim based on the wrongdoer's degree of fault. G. L. c. 229, § 2, as amended through St. 1965, c. 683, § 1. *Gaudette* v. *Webb*, 362 Mass. 60, 71 (1972). *Oliveria* v. *Oliveria*, 305 Mass. 297, 301-302 (1940), overruled on other grounds, *Sorensen* v. *Sorensen*, 369 Mass. 350, 353 (1975). Loss of earning capacity, therefore, had no part in measuring damages for wrongful death, nor did funeral expenses.

to our conclusion. PIP benefits are largely concerned with immediate out-of-pocket losses and expenses (*Pinnick* v. *Cleary*, 360 Mass. 1, 6 [1971]) and not at all with adding net assets to a deceased's estate. Thus, inclusion of funeral expenses and the actual lost wages of a living person might reasonably be regarded as reimbursement for out-of-pocket expenses, whereas payment for a deceased's loss of future earning capacity would not be so regarded.

It may be argued that, contrary to proper rules of statutory construction, we have written out of the statute the words referring to wages lost as a result of bodily injury "including death at any time resulting therefrom." We think the words may have continuing meaning at least as to compensation that would have been paid for past services but never became payable because the insured died before he completed a task for which he was to be paid. The loss in such a case might fairly be viewed as "amounts actually lost by reason of the accident."

The order dismissing the report is affirmed.

*So ordered.*