Greco, J.
This is a Dist./Mun. Cts. R. A. D. A., Rule 8B appeal of a judgment entered for defendant Arbella Mutual Insurance Company (“Arbella”) on plaintiff Barbara Hod-nett’s (“Hodnett”) G.L.c. 90, §34M claim for personal injury protection (“PIP”) benefits under her husband’s automobile insurance policy.
On August 6,1993, Hodnett was injured in a motor vehicle accident while riding as a passenger in a car driven by her husband who was insured by Arbella. From August 6, 1993 to November 11, 1993, Hodnett was treated by various health care providers, but did not submit any claim to Arbella for payment for these services. However, one of the providers, Somerville Hospital, submitted two medical bills directly to Arbella for payment under Hodnett’s PIP coverage.[1] Upon receipt of those bills, Arbella advised Hod-nett in writing that it was investigating the matter to determine whether the loss was covered by her husband’s policy. A week later, Arbella sent “PIP forms” to Hodnett’s attorney, and requested that the attorney forward a letter of representation and that Hod-nett give a recorded statement. The letter of representation was sent on October 25, 1993, and the recorded statement was given on November 9,1993.
Immediately thereafter, an issue arose between the parties as to whether Hodnett would submit to a physical examination by a doctor selected by Arbella (i.e., an independent medical examination or “IME”). Arbella’s request for such examination was made on November 10,1993. On November 15,1993, Hodnett’s attorney indicated that his client would be unable to attend the IME “as she [was] actively treating with her own physician.” The attorney also maintained that Arbella “[did] not have a right to have any medical examination at [that] time.” Arbella countered that it did have such a right, and warned that it might disclaim coverage if Hodnett did not submit to the examination. Hodnett refused to be examined, and Arbella disclaimed coverage on November 22, 1993. Hodnett’s attorney responded, by letter dated November 25, 1993, that Hodnett had not filed any PIP claim and that
[w]hen [Ms. Hodnett] and I both have the opportunity to have a firm diagnosis and prognosis and when we understand what medical treatment she will have to undergo, then a decision will be made as to what type of claim or claims will be filed.
In a letter to Arbella a few days later, Hodnett’s attorney reiterated that he had “not elected whether to file a claim on behalf of [his] client or not.”
On February 2, 1994, Hodnett finally submitted a PIP claim seeking payment for medical treatment following her accident of the preceding August. The claim sought payment of bills totalling $3,873.50 for treatment of a “Cervical Sprine [sic] Sprain and *132 Lumbrosacral Sprain” and indicated that there would be further medical expenses. Although submitted in February, 1994, the claim was dated December 5,1993.
1. In finding for Arbella, the trial judge concluded that Hodnett’s “refusal to be examined by an independent physician amounted to a failure to cooperate” in violation of Hodnett’s policy with Arbella, which provided that “[i]f anyone makes a claim or seeks payment under personal injury property protection [the insurer has] a right to require that person be examined by a doctor selected by [the insurer].” While “no fault coverage is contractual in nature,” Cyr v. Farias, 367 Mass. 720, 725 (1975), it is a creature of statute and the traditional rules of construction for insurance contracts are of diminished significance. Bilodeau v. Lumbermens Mut. Casualty Co., 392 Mass. 537, 541 (1984). Consequently, we are guided by the provisions of G.L.c. 90, §34M and its underlying intent “to accomplish the legislative aim of providing compensation to those who have been injured by automobiles.” Desmarais v. Standard Accident Ins. Co., 331 Mass. 199, 202 (1954). See also Darcy v. Hartford Ins. Co., 407 Mass. 481 (1990), wherein the Supreme Judicial Court restated its rejection of “the strict contractual view of insurance policy interpretation, under which the failure of any provision, characterized as a condition precedent, automatically relieved an insurer of any obligation to pay on the policy.” Id. at 489.
Pursuant to G.L.c. 90, §34M, an injured party
shall submit to physical examinations by physicians selected by the insurer as often as may be reasonably required and shall do all things necessary to enable the insurer to obtain medical reports and other needed information to assist in determining the amounts due. Non-cooperation of an injured party shall be a defense to the insurer in any suits for benefits authorized by [§34M].
In this case, plaintiff Hodnett offered no valid excuse, grounded in fact, for not submitting to the IME. That she was “actively treating with her physician” would not have precluded her attendance at the examination. Indeed, in most cases where an IME is sought, the person to be examined has a medical problem for which he or she is being treated and is seeking payment from an insurer for such treatment. Similarly, the desire of Hodnett and her attorney to obtain a “firm diagnosis and prognosis” so as to be able to “understand what medical treatment she will have to undergo” was not relevant to her ability to undergo an IME.
Contraiy to the plaintiff’s contention, there is also nothing in §34M which renders the actual filing of a claim by the insured a condition precedent to the insurer’s request for an IME. Under the statute, a health care provider may submit a request for payment directly to the insurance company which must make payment “upon receipt of reasonable proof of the fact and amount of expenses and loss incurred.” Thus in addition to creating “a prompt, inexpensive means of reimbursing claimants for out-of-pocket expenses.” Flanagan v. Liberty Mut. Ins. Co., 383 Mass. 195, 198 (1981), §34M is also designed to guarantee the prompt payment to those who provide health care services in expectation of payment from an insurance company. The ability of an insured to delay the IME until he or she chose to file a claim would delay payment to health providers and frustrate this purpose.
That the Legislature did not intend to vest in the insured control over the timing if PIP reimbursement is further demonstrated by the requirement in §34M that a claim “be presented to the company ... as soon as practicable after the accident occurs from which such claim arises.” The statute does not, as the plaintiff contends, permit an injured party to delay for the full two year period of the statute of limitations before filing a claim. Hodnett was required to submit her claim to Arbella “as soon [after August 6,1993] as practicable,” but, in any event, no later than August 6,1995, whether or not it was “practicable” to do so. It was “practicable” to file in this case as soon as Hodnett had knowledge of what a claim would include, i.e., “a written description of the nature and extent of injuries sustained, treatment received and contemplated and such other information as may assist in determining the amount due as payable.” G.L.c. 90, §34M. Compare In Re Wheaton, 310 Mass. 504, 506 (1942); Wilcox v. Metropolitan Life Ins. Co., 304 Mass. *133 441, 443 (1939). The PIP claim form simply asked Hodnett to describe her injury and specify where and by whom she was treated; there was no requirement that she “have a firm diagnosis and prognosis.” Arbella specifically recognized the fluidity of the process by asking for the amount of medical bills “to date” and whether the' claimant would have additional medical expenses. There is absolutely no evidence to indicate that Hodnett was in any better position to make a claim on February 2, 1994, the date the claim was submitted, that in November, 1993 when she declined to submit to an IME. The notion that a claimant’s course of treatment must have come to an end point or even a predictable end point before a PIP claim must be filed would contravene the §34M legislative intent to provide prompt reimbursement for services provided.
We conclude, therefore, that the plaintiff failed to cooperate with Arbella’s efforts to obtain an independent medical examination.
2. The plaintiff next contends that even if she was required by G.L.c. 90, §34M to submit to the requested IME, Arbella could not disclaim coverage unless it established that it was prejudiced by her failure to do so.
The statute, however, is unequivocal in this regard. It expressly provides that the noncooperation of an injured party with respect to a medical examination is “a defense to the insurer in any suit for benefits.” No requirement that there be prejudice is stated. That the Legislature could, if it so desired, have imposed such a requirement is obvious from its specific inclusion of a prejudice requirement in a similar context in G.L.c. 175, §112. The latter very clearly provides that
[a]n insurance company shall not deny insurance coverage to an insured because of failure of an insured to seasonably notify an insurance company of an occurrence, incident, claim or of a suit founded upon an occurrence, incident or claim which may give rise to the liability insured against unless the insurance company has been prejudiced thereby.
See Johnson Controls, Inc. v. Bowes, 381 Mass. 278, 282 (1980) (failure to notify insurer of accident or filing of lawsuit is not breach of policy in absence of proof of prejudice to insurer); MacInnis v. Aetna Life & Casualty Co., 403 Mass. 220, 222-223 (1988) (prejudice required for disclaimer based on breach of consent-to-settlement provision); Darcy v. Hartford Ins. Co., supra at 488-490 (no breach of duty to cooperate in event of lawsuit by attending hearings, procuring relevant evidence and witnesses etc. in absence of prejudice to insurer). In such cases, the practical consequences and prejudicial effect of the insured’s noncooperation remained speculative in the absence of proof that the insured’s breach “seriously impair[ed] the insurer’s investigation or defense of the action.” Id. at 490.[2]
The Legislature’s exclusion from §34M of proof of prejudice as a prerequisite to an insurer’s defense of noncooperation reasonably suggests its recognition of the probable prejudice resulting whenever an insurer is deprived of the opportunity to have a claimant examined as soon as possible after the accident in question. It is at that point in time when the nature and extent of the claimant’s injuries, and the necessity of specific treatment can be most readily ascertained. Absent an IME, an insurer is compelled to rely on the observations, conclusions and reports of the very health providers who are seeking payment for services rendered. An injured party’s refusal to submit to an IME thus clearly frustrates the obvious purpose of the policy and statutory requirement, i.e. to permit the insurer to make its own assessment of the claimant’s injuries and of the reasonableness of the medical expenses for which compensation is sought. Indeed an insured’s refusal of an IME does not merely impair the insurer’s efforts, but actually prevents any *134 meaningful, independent investigation of the PIP claim.
With respect to analogous examinations under oath, the Supreme Judicial Court in Mello v. Hingham Mut. Fire Ins. Co., 421 Mass. 333 (1995) agreed with “the law in most jurisdictions that the submission [by the insured] to an examination [under oath], if the request is reasonable, is strictly construed as a condition precedent to the insurer’s liability.” Id. at 337. The obligation to submit to a medical examination is clearly more akin to a duty to submit to an examination under oath than to insurance policy obligations to give notice, to consent to settlement etc. Moreover, the inherent prejudice to an insurer’s investigation may well be greater where it is deprived of, or delayed in obtaining, a medical examination of the claimant as opposed to a recorded statement. While memories may fade in varying degrees when a statement is delayed, the actual physical condition of the injured party will inevitably change over time with the very medical treatment for which PIP benefits are sought.
We conclude, therefore, that an insurer need not prove prejudice to avail itself in a PIP action of the statutory defense of a claimant’s refusal to submit to an IME. Where the insured fails to cooperate with a reasonable request for an IME, there is no danger that he or she will be blindsided by the insurer’s disclaimer of coverage. The insured’s simple obligation to appear for the IME is not subject to interpretation or misunderstanding; both the examination request and the consequences of refusing the same are clear. In this case, plaintiff Hodnett, represented by counsel, made the conscious decision not to submit to the IME to which Arbella was statutorily entitled. She should not be surprised that Arbella disclaimed coverage, as it said it would, in response to her IME refusal.
3. Finally, Hodnett argues that the trial judge erred with respect to four requests for rulings which the judge allowed with the notation:
Allowed as a statement of the cited case. However, the Court does not find the underlying facts assumed in this request.
There was no error or confusion in the judge’s rulings. The statement of law in each of the requests at issue related to the specific factual situations in the cases cited. The trial judge correctly accepted such statements as correct propositions of law dispositive of the facts in those cases, but properly indicated that such legal principles did not dictate a finding for the plaintiff herein.
Accordingly, the trial court’s judgment for the defendant is affirmed. The plaintiff’s appeal is dismissed.
So ordered.

 The first bill was submitted on September 30,1993 in the amount of $436.00 for services rendered to Hodnett on August 16,1993. The second bill in the amount of $125.00 was submitted on October 14,1993 for services rendered on September 15,1993.

 It could not be assumed, for example, that an insured’s attendance at trial or failure to attend would significantly affect the outcome of proceedings. Similarly, an insurance company would ordinarily have an equal, if not superior, ability to procure relevant evidence and witnesses, and the insured’s failure to assist the insurance company would not prejudice the company’s ability to investigate and defend an action.