Coven, J.
At issue in this Dist./Mun. Cts. R. A. D. A., Rule 8A, appeal by the defendant is the proper interpretation to be given the G.L.c. 90, §34A term “average weekly wage” in determining the amount of Personal Injury Protection (“PIP”) benefits due to the plaintiff for lost wages under G.L.c. 90, §34M and the applicable standard automobile insurance policy.[1]
The parties filed cross-motions for summary judgment based upon an agreed statement of facts. The statement indicated that prior to graduating from high school in May of 2002, plaintiff Kirsten DiGiacomo was never employed. On May 21, 2002, she was hired by United Parcel Service (“UPS”). *135 On July 23, 2002, the plaintiff was injured in an automobile accident as a passenger in one of the vehicles which was insured under an automobile policy issued by defendant Metropolitan Property and Casualty Insurance Company (“Metropolitan”).[2] The injury caused the plaintiff to remain out of work for approximately five weeks after the accident.
The plaintiff was entitled to G.L.c. 90, §34M lost wage benefits under the insurance policy issued by Metropolitan. The plaintiff earned $1,766.67 in gross wages during her ten calendar weeks of UPS employment prior to the date of her accident.[3] She filed a lost wages claim with Metropolitan for $627.00, calculated by dividing her gross income ($1,766.67) by the number of weeks she worked in the preceding year and multiplying that number by seventy-five (75%) percent. Metropolitan rejected her claim on the basis that a person’s average weekly wage is to be determined by dividing that person’s gross earnings in a fifty-two week period by fifty-two regardless of the number of weeks worked. Metropolitan thus divided the plaintiff’s gross earnings by fifty-two, and then multiplied that figure ($33.97) by 75% to arrive at an “average weekly wage” for the plaintiff of $25.48. Metropolitan then issued payment in the amount of $127.40 for the five weeks of income lost by the defendant.
The motion judge agreed with the plaintiff’s formula that a claim for lost wage benefits is to be determined by the gross income received in the preceding year divided by the number of weeks worked by the §34M claimant. The plaintiff’s summary judgment motion was allowed, Metropolitan’s cross-motion was denied and this appeal followed.
The term “average weekly wage” is not defined in either G.L.c. 90, §34A or the insurance policy. Metropolitan agues that Gomes v. Metropolitan Prop. & Cas. Ins. Co., 45 Mass. App. Ct. 27 (1998) controls. In that case, plaintiff Gomes had a work history that spanned the two year period leading up to the date of his injury and claim for PIP wage benefits. However, less than two weeks prior to the date of injury, Gomes had changed employers. As a result, Gomes earned a weekly salary of roughly twenty-five percent of what he had previously received from his former employer. Defendant Metropolitan argued that as the term “average weekly wage” was used in §34A, it was required under §34M to pay only the lesser of seventy five (75%) percent of Gomes’ average weekly wage over the prior fifty-two week employment history, or seventy-five (75%) percent of Gomes’ then current average weekly wage. The Gomes Court affirmed the motion judge’s ruling in favor of Gomes that his average weekly *136 wage was to be calculated by dividing Gomes’ gross earnings by fifty-two for the fifty-two week period prior to the date of his injury.
Gomes is distinguishable on its facts. The plaintiff therein had a prior work history that covered the full fifty-two week period before the date of injury. In this case, the plaintiff worked only five weeks in the year preceding her injury. As the issue in this case was not presented in Gomes, Metropolitan’s reliance upon that decision is misplaced. Flanagan v. Liberty Mutual Ins. Co., 383 Mass. 195 (1981), cited in Gomes, is also inapposite. The issue in Flanagan was whether the estate of a person killed instantly was entitled to recover for lost wages.
Turning to §34A, “we apply the principle that ‘a statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated.’ Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 513 (1975), quoting Industrial Fin. Corp. v. State Tax Comm’n, 367 Mass. 360, 364 (1975).” Dominguez v. Liberty Mut. Ins. Co., 429 Mass. 112, 115 (1999). We are mindful that in achieving a reading consistent with the Legislature’s intent, a strict interpretation is not required. See Mailhot v. Travelers Ins. Co., 375 Mass. 342 (1978) (statutory reference to exclusion of PIP wage benefits for person covered under Massachusetts worker’s compensation law also expresses Legislative intent to exclude such benefits for person covered by federal worker’s compensation law).
The so-called “no-fault” automobile insurance reform law, of which §34A is a part, “was adopted to reduce the number of small motor vehicle tort cases being entered in the courts of the Commonwealth, to provide a prompt, inexpensive means of reimbursing claimants for out-of-pocket expenses, and to address the high cost of motor vehicle insurance in the Commonwealth.” Flanagan v. Liberty Mutual Ins. Co., supra at 198, citing Pinnick v. Cleary, 360 Mass. 1, 16-21 (1971). With the issue of Legislative intent settled, we turn to the statutory language itself. Flanagan, supra at 196.
Section 34A defines the term “personal injury protection.” Within that definition and relevant to the issue presented, §34A requires an insurer to “provide [to an injured party] seventy-five per cent of such person’s average weekly wage or salary or its equivalent for the year immediately preceding the accident.”[4] Standing alone, the language does not mandate that an “average weekly wage” be determined by dividing an injured party’s gross wages over the preceding year by fifty-two regardless of whether the injured party was fully employed during that period. Nor does the language prohibit such an interpretation. We find, in the circumstances of this case, that a plain reading of the language requires computation of an injured party’s average weekly wage by dividing gross earned income by the number of weeks employed in the preceding fifty-two week period.
There is a reference in §34A to the exclusion of benefits to any “person entitled to payments or benefits under the provision of chapter one hundred and fifty-two.” Chapter 152, §1(1), which covers worker’s compensation *137 claims, defines “average weekly wage.”[5] Within the definition, the Legislature has set out essentially three methods of calculating a claimant’s average weekly wage. First, the average weekly wage is to be determined by dividing the injured party’s earnings by fifty-two. Second, where the person has “lost more than two weeks’ time” in the year preceding the injury, the average weekly wage is determined by dividing the earnings by the number of weeks worked. Third,
[wjhere, by reason of the shortness of the time during which the employee has been [employed]... it is impracticable to compute the average weekly wages ... regard may be had to the average weekly amount which, during the twelve months previous to the injury, was being earned by a person in the same grade employed at the same work by the same employer.
While it may be argued that we should, because of the reference to the worker’s compensation statute, adopt that definition for the term “average weekly wage” in §34A, the formula found in G.L.c. 152, §1(1) is not a complete statement of how an “average weekly wage” for worker’s compensation is to be determined. Rather, the formula governs only those cases that fall “within its terms.” Rice’s Case, 229 Mass. 325, 328 (1918). In Rice’s Case, the sixteen year old injured claimant had been employed part-time and had worked only six months prior to her injury. The evidence did not permit the application of any of the three statutory formulas for determining her “average weekly wage.”[6] Because the definition was not applicable to the case, the Supreme Judicial Court held that the words “‘average weekly wages’ ... should be interpreted in their common and ordinary sense and should be computed by dividing the total amount earned [by Rice] by the number of weeks of employment.” Id. at 328.
In the absence of express formula in the statute and in the particular circumstances of this case, we find that the Legislature’s intent as to the “average weekly wage” of the plaintiff is best implemented by dividing her gross earnings by the number of weeks of her employment and then calculating *138 75% of that figure. Providing the plaintiff with a lost wages benefit of $132.50 per week is consistent with the underlying purpose and policy of personal injury protection benefits.
Judgment affirmed. Appeal dismissed.
So ordered.

 Section 34A of G.L.c. 90 provides, in relevant part: “‘Personal injury protection’ provisions of a motor vehicle liability policy or motor vehicle liability bond which provide for payment to the ... passenger of the insured’s or obli-gor’s motor vehicle ... unless any of the aforesaid is a person entitled to payments or benefits under the provisions of chapter one hundred and fifty-two,... in the case of persons employed ... at the time of an accident of any amounts actually lost by reason of inability to work and earn wages or salary or their equivalent... that would otherwise have been earned in the normal course of an injured person’s employment... and in the case of persons not employed or self-employed at the time of an accident of any loss by reason of diminution of earning power... as a result of bodily injury,... caused by accident and not suffered intentionally while in ... the insured’s or obligor’s motor vehicle ... to the amount or limit of at least eight thousand dollars on account of injury... except that payments for loss of wages or salary or their equivalent or, in the case of person not employed, loss by reason of diminution of earning power, shall be limited to amounts actually lost by reason of the accident and further limited... in the case of persons not entitled to wages or salary or their equivalent under any program for continuation of said wages or salary or their equivalent to an amount that will provide seventy-five percent of any such person’s average weekly wage or salary or its equivalent for the year immediately preceding the accident [emphasis supplied].”
Part II, Section B of the standard automobile liability policy providing compulsory insurance for PIP describes lost wage benefits as follows: “If an injured person is out of work because of the accident, we will pay lost wages up to 75% of his or her average weekly gross wage or equivalent for the year ending on the day immediately before the accident....”

 The language of the Massachusetts standard automobile insurance policy is controlled by the Division of Insurance. Gomez v. Metropolitan Prop. & Cas. Ins. Co., 45 Mass. App. Ct. 27, 31 (1998). Had the Division of Insurance defined the calculation of an “average weekly wage” under G.L.c. 90, §34A, its construction would have been accorded weight as an administrative interpretation. Flanagan v. Liberty Mut. Ins. Co., 383 Mass. 195, 196 n.3 (1981). In the absence of such an administrative interpretation and because the compensation provided under the policy is the same as that provided under the statute, we decide this appeal by reference to the statute.

 The parties agreed in their cross-motions for summary judgment that the gross amount earned by the plaintiff was $1,766.67. The payroll records from UPS, attached to the plaintiff’s brief but not included as an exhibit on appeal, clearly show that the gross amount earned by the plaintiff was only $1,415.89. However, as both parties have agreed upon the $1,766.67 figure included in their statement of agreed facts presented to the motion judge, we use that figure in our analysis.

 Personal injury protection benefits also provide for payment of “medical-related expenses ... and ... replacement services, that is, payments to someone outside of the household who has been hired to perform ordinary and necessary services that ’the injured person would have performed not for income but for the benefit of ... his household.’” Creswell v. Medical West Community Health Plan, Inc., 419 Mass. 327, 328-329 (1995).

 Section 1 (1) states “Average weekly wages, the earnings of the injured employee during the period of twelve calendar months immediately preceding the date of injury, divided by fifty-two; but if the injured employee lost more than two weeks’ time during such period, the earnings for the remainder of such twelve calendar months shall be divided by the number of weeks remaining after the time so lost has been deducted. Where, by reason of the shortness of the time during which the employee has been in the employment of his employer or the nature or terms of the employment, it is impracticable to compute the average weekly wages, as above defined, regard may be had to the average weekly amount which, during the twelve months previous to the injury, was being earned by a person in the same grade employed at the same work by the same employer, or, if there is no person so employed, by a person in the same grade employed in the same class of employment and in the same district. In case the injured employee is employed in the concurrent service of more than one insured employer or self-insurer, his total earnings from the several insured employers and self-insurers shall be considered in determining his average weekly wages.”

 There is no material difference between the definition of “average weekly wage” in G.L.c. 152, §1(1) and the definition of the same term in St. 1911, c. 751, Part V, §2 upon which Rice’s Case was decided.