Swan, J.
Barron Chiropractic & Rehabilitation, P.C. (“Barron”) filed with Premier Insurance Company of Massachusetts (“Premier”) a claim for reimbursement of expenses for chiropractic services rendered to Courtney Woods (“Woods”)[1] under the Personal Injury Protection (“PIP”) coverage of an automobile insurance policy. Alleging the failure of Woods to attend a medical examination, Premier denied the claim. Barron sued Premier for breach of Premier’s PIP contract and violation of the Consumer Protection Act, G.L.c. 93A. Premier moved for summary judgment on the grounds of Woods’s noncooperation with the insurer. Barron opposed the motion and cross-moved for summary judgment on the grounds that its medical bills were indisputably reasonable for treatment that was necessary and causally related to Woods’s accident. The court below allowed Premier’s motion, and from that ruling Barron has appealed.[2]
We view the facts in the light most favorable to Barron, the nonmoving party. Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991), citing Mass. R. Civ. P., Rule 56(c). On November 19, 2003, Woods was injured in Dorchester when a car in which he was a passenger was struck from behind. The car was insured by Premier. Six days later, Premier sent two letters to Woods. The first simply asked Woods to contact a named analyst at Premier. The second was longer, explaining Woods’s possible eligibility for PIP coverage as well as the contractual conditions for obtaining coverage, and including a PIP form to be completed and sent with any medical bills to the analyst. Neither letter mentioned anything about Woods undergoing a medical exam at the behest of the insurer. The following day, a medical evaluator, BME Gateway (“Gateway”), sent a notice to the analyst at Premier, with a copy (“cc”) to Woods, scheduling an “independent medical examination” (“IME”), and stating specifically, “This is to confirm that Courtney Woods is scheduled to be examined at *2 the following date, time and place,” then setting forth December 16 at 1:00 P.M. at Gateway’s office in Medford. The notice further said that the “examinee has been instructed to bring” various medical records to the IME. Woods did not appear for the IME. On December 17, at Premier’s request, Gateway sent a second notice to Premier, again with a copy to Woods, identical in content to the first, but scheduling an IME for the following January 6. Woods did not appear for that IME either. On January 7, 2004, Premier sent Woods a letter, enclosing another PIP form, requesting that it be completed and returned to Premier within two weeks. The letter said nothing about his failure to go to the IME. On January 21, Premier sent Woods a letter denying PIP coverage for failure, in the writer’s words, of “your client” to attend the January 6 IME.
Each correspondence from Premier was addressed to Woods at 15 Hansborough, Dorchester, MA 02124. Each notice of Gateway to Premier carried a notation of “cc: Courtney Woods” at 15 Hansborough, Boston, MA 02116, and stated, “If the appointment needs to be rescheduled, please call our office as soon as possible.”
On February 3, Woods’s attorney sent to Premier a completed, signed PIP form. Twenty-four days later, Woods began treatment with Barron. According to Barron’s initial examination report, Woods told Barron he “may have received something stating to see a doctor but he thought it was for treatment and he at that time was continuing to refuse any treatment for his pains.” According to Barron, Woods was “bipolar and currently off of medication.” As noted, Barron’s subsequent claim for PIP reimbursement was denied by Premier.
Summary judgment may be granted only when “there is no genuine issue as to any material fact.” Mass. R. Civ. R, Rule 56(c). Premier argues, and Barron disputes, that there is no issue of the fact that Woods failed to cooperate with the insurance company by not attending an IME. Barron also argues that Premier had no right to request an IME without a claim first being filed, and that to prevail on a defense of noncooperation, an insurer needs to show that it has been prejudiced in some degree.
Both parties agree that under the insurance contract, Premier had a “right to require [the injured] person to be examined by doctors selected by” Premier and that “ [f] ailure to cooperate with [Premier] may result in the denial of the claim.” The contract is a creature of the PIP statute, which mandates that an injured party “shall submit to physical examinations by physicians selected by the insurer as often as may be reasonably required” and that “ [n] oncooperation of an injured party shall be a defense to the insurer in any suit for benefits authorized by” the statute. G.L.c. 90, §34M. Both parties also agree that the case is controlled by Hodnett v. Arbella Ins. Co., 1996 Mass. App. Div. 131, which reiterates the statutory requirement of cooperation. Id. at 132. Contravening Barron’s position on appeal, Hodnett further holds that “nothing in §34M ... renders the actual filing of a claim by the [injured party] a condition precedent to the insurer’s request for an IME,” id., and that in raising a defense of noncooperation, the insurer need not show prejudice. Id. at 133. Here, Premier was entitled to request an IME of Woods before he filed a claim, i.e., by sending in a PIP form. Likewise, Premier need not have shown prejudice from Woods’s failure to attend the IME.
But Woods’s case differs from Hodnett in one important respect. In Hodnett, in response to the insurer’s request for an IME, the injured party’s attorney stated that *3 “his client would be unable to attend the IME ‘as she [was] treating with her own physician.’ The attorney also maintained that [the insurer] ‘[did] not have a right to have any medical examination at [that] time.’” Id. at 131. There was, in other words, an unconditional statement by the injured party that she would not appear for an IME. On those facts, this Division concluded that the insurer properly denied her subsequent claim for reimbursement of medical expenses for noncooperation.
Likewise, Woods’s apparent disregard of Premier’s IME requests, together with his three-month delay in seeking treatment for his injuries, understandably led the court below to find a clear case of noncooperation. Our analysis of the documents in question, however, brings us to a different conclusion. To begin, the correspondence directed to Woods was less than a model of clarity as to his obligation to submit to an IME. The first notice of scheduling an IME for Woods, arriving on the heels of the first two letters from Premier to Woods, came not from Premier, but from Gateway. Premier’s letters had made no mention of Gateway or of Premier’s wish to have an IME performed or of the consequences of failing to submit to an IME. There is no reason to assume that Woods knew what Gateway was or why it was scheduling an examination. Indeed, Gateway’s notice was not even addressed to Woods, but to Premier, with a “cc” to Woods. The Gateway notice carried no warning of any sanctions for not appearing, and instead of commanding or requesting attendance, simply concluded with a request to Premier to call Gateway “[i]f the appointment needs to be rescheduled.” The next correspondence to Woods, again by “cc,” was an identical Gateway notice to Premier with a new IME date and also no warning of sanctions for not appearing. The day after the second scheduled IME date, and Woods’s nonappearance at it, Premier sent Woods its third letter, reiterating only the need to file a PIP claim, but making no mention of Woods’s absence from the IME the day before. Indeed, the very first mention by Premier, or by anyone, of the requirement to show for an IME was in Premier’s last letter sent two weeks later, denying coverage for not showing for it.
The correspondence thus provided by Premier and Gateway to Woods gave no indication until the end, i.e., until coverage was denied, of what would happen if Woods did not come to the appointed IME. Under these circumstances, Woods’s failure to respond to the Gateway notices falls well short of the unqualified declaration of noncompliance by the injured party in Hodnett.
It is also unclear whether Woods even received the Gateway notices, with their third-party tenor, or Premier’s letters[3]: they were, after all, sent to two different zip codes, a fact not brought to the trial court’s attention.’[4] Finally, Barron’s first examination report indicates that Woods said he “may have received something stating to see a doctor but he thought it was for treatment and he at that time was continuing to refuse treatment.” As we know nothing of Woods’s educational level, but are *4 informed by Barron that Woods “is bipolar and currently off of medication,” Woods’s interpretation of the purpose of the Gateway notices — that ‘Woods is scheduled to be examined” etc. — does not seem unreasonable. While the office notes of Barron, made after denial of coverage, may be self-serving, they nevertheless create an additional area of inquiry on the ultimate factual issue of noncooperation.
On the record before us, therefore, we are unable to conclude that there exist no facts in dispute whether Woods even knew of his obligation to undergo an IME, let alone whether he chose not to cooperate with the insurer. While Premier may produce evidence at trial supporting its defense of noncooperation, it was not entitled to summary judgment.
As the court below took no action, we do not address Barron’s cross motion for summary judgment The judgment is reversed, and the action is remanded to the trial court for further proceedings.
So ordered.

 Also spelled “Wood” in the record.

 The court took no action on Barron’s cross motion for summary judgment, presumably because the motion was mooted by the allowance of Premier’s motion.

 The last letter from Premier, referring as it did to the addressee Woods not as “you,” but as “your client,” appears to be a word-processed form letter usually sent to attorneys.

 Premier urges us on appeal not to consider the zip code differences, as that issue was not argued by Barron in the court below. The codes, however, are there to be seen in the documents in the record appendix, and we choose not to ignore them.