Coven, J.
Chiropractic Care Centers, Inc. (“Chiropractic Care”) has appealed the allowance of summary judgment in favor of Arbella Mutual Insurance Company (“Arbella”) based on its defense that Chiropractic Care’s client failed to cooperate in its investigation into the client’s claim for personal injury protection (“PIP”) benefits by failing, wilfully and without excuse, to attend two scheduled independent medical examinations (“IME”). We are presented with the following question: Is wilfulness in failing to attend the IMEs established where (1) there is no dispute that the insured twice caused letters to be sent via U.S. mail, postage prepaid, and properly addressed to Chiropractic Care’s client, in which it notified the client, in each letter, of the scheduled exam, and the client failed to attend (or contact Arbella), and (2) the client’s counsel twice sent letters to the client to confirm the client’s appearance for the medical examinations and the client did not respond to the letters. We conclude that a wilful failure to attend was established in the circumstances of this case and that summary judgment was properly granted.
Rule 56(b) of the Mass. R. Civ. P. provides that “[a] party against whom a claim... is asserted... may, at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof.” Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving parly is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983). The moving party has the burden of affirmatively demonstrating the absence of a triable issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989).
Based on the record and briefs, it is not contested that Arbella issued a standard Massachusetts automobile insurance policy, seventh edition, that included PIP benefits and that covered a motor vehicle in which Chiropractic Care’s client was a passenger when that vehicle was struck from behind by another motor vehicle. The accident occurred on February 12, 2010. The client received treatment from Chiropractic Care following the accident, and the cost of the treatment services amounted to $1,775.00.[1] Although the dates of services are not part of the record, the PIP application form filled out by Chiropractic Care’s client stated that the amount *203 of medical bills was $1,775.00 and that there would not be additional medical expenses. The application was dated March 12, 2010.
Although Arbella did not receive the PIP application until July 21, 2010, it was aware by February 17, 2010 that the vehicle it insured was involved in an accident. As of March 18, 2010, Arbella knew that Chiropractic Care was treating a person involved in the accident and that the person was represented by counsel. On April 5, 2010, Arbella received a letter of representation from the named counsel; counsel also forwarded a copy of the accident report to Arbella.[2]
Through one of its service providers, Arbella requested that an IME be scheduled for Chiropractic Care’s client. Arbella gave the service provider the address of Chiropractic Care’s client as listed in the accident report. On April 20,2010, the service provider sent, by U.S. mail, postage prepaid, notice to Chiropractic Care’s client of an examination scheduled for April 29, 2010. When the client failed to appear, another notice, on May 3, 2010, was sent by U.S. mail, postage prepaid, to Chiropractic Care’s client informing the client of a scheduled exam for May 21,2010. A copy of each letter was sent to counsel for Chiropractic Care’s client. On receipt, counsel mailed letters to the client “to confirm her appearance for the medical examinations.” Those “letters ... sent were not returned to [counsel’s] office by the post office.” Counsel also attempted to call the client, but was unable to contact the client because the client’s telephone number had been disconnected.
Included in the record and referenced by counsel for Chiropractic Care’s client was a July 20, 2010 letter sent by that counsel to Arbella in which he informed Arbella that counsel and the client had not been in contact “for several months.” Counsel also requested that Arbella make payment to Chiropractic Care and stated that, following the payment, counsel would “have no other alternative but to close out [the] file.” Counsel added that “ [i]f for some reason [counsel] should hear from [the] client, [counsel] wfould] let [Arbella] know.”
General Laws c. 90, §34M provides that “[n]oncooperation of an injured party shall be a defense to the insurer in any suit for benefits authorized.” Cooperation is a statutory mandate. Lynn Physical Therapy, Inc. v. Commerce Ins. Co., 2011 Mass. App. Div. 107, 111. This mandate is also a part of the standard Massachusetts automobile insurance policy, seventh edition.[3] A party injured may not refuse to attend *204 an IME because that party has not yet formally filed a PIP application. Hodnett v. Arbella Mut. Ins. Co., 1996 Mass. App. Div. 131, 132.
Under Massachusetts law, the mailing of a properly addressed letter constitutes prima facie evidence of the intended recipient’s receipt of the mailing. See Anderson v. Town of Billerica, 309 Mass. 516, 518 (1941) (“The mailing, postage prepaid of a properly addressed letter is prima facie evidence of its receipt by the addressee ...” [citation omitted].); Eveland v. Lawson, 240 Mass. 99, 103 (1921) (“The depositing of a letter in the post office, postage prepaid, properly addressed to a person at his place of business or residence, is prima facie evidence that it was received in the ordinary course of mails.”); Mutual Bank for Sav. v. Silverman, 13 Mass. App. Ct. 1059, 1060-1061 (1982) (“Evidence of the mailing will ordinarily warrant a finding that the notice was received by the intended recipient....”). In this case, not only was there proper mailing by Arbella’s service provider to the address provided for Chiropractic Care’s client in the accident report, but there were also confirmation letters sent by the client’s counsel to the client.
The judge could properly have considered that Chiropractic Care’s client provided the same residential address in the PIP application as was given on the accident report, although the PIP application was not received until after the scheduling letters had been sent, and that the accident report, containing the mailing address, had been forwarded by counsel. In these circumstances, as a matter of law, there was uncontested evidence that Arbella caused two letters to be sent to Chiropractic Care’s client’s address, by U.S. mail, postage prepaid, that confirmatory letters were sent to the same address by counsel for the client, and that the individual client failed to attend or make contact with either counsel or Arbella. In the absence of some rebuttal evidence, the prima facie evidence advanced by Arbella in this case, including the client’s failure to, at least, contact counsel, Chiropractic Care Ctrs., Inc. v. Arbella Mutual Ins. Co., 2012 Mass. App. Div._(No. 12-ADMS-10011, issued October 12, 2012) established a wilful and unexcused breach of the duty to cooperate.[4]
Summary judgment affirmed.
So ordered.

 Chiropractic Care is statutorily authorized to bring this claim for services rendered to its client. Chapter 90, §34M provides, in relevant part: “In any case where [PIP] benefits due and payable remain unpaid for more than thirty days, any unpaid party shall be deemed a party to a contract with the insurer responsible for payment of amounts therein determined to be due in accordance with the provisions of this chapter.”

 The author of the report is the driver of the motor vehicle in which Chiropractic Care’s client was a passenger. The driver was not identified as the owner of the vehicle.

 The policy states, in part: “Fourth, Cooperate with Us:
“After an accident or loss, you or anyone else covered under this policy must cooperate with us in the investigation, settlement and defense of any claim or lawsuit. We must be sent copies of all legal documents in connection with the accident or loss.
“We may also require you and any person seeking payment under any part of this policy to submit to an examination under oath at a place designated by us, within a reasonable time after we are notified of the claim.
“If anyone makes a claim or seeks payment under Personal Injury Protection [coverage]..., we have a right to require that person to be examined by doctors selected by us.
“Failure to cooperate with us may result in the denial of the claim.”

 As was stated in Trinidad v. Pilgrim Ins. Co., 2009 Mass. App. Div. 260, “[ajlthough prejudice to the insurer need not be shown to deny coverage, the plaintiff’s admitted noncooperation prevented the defendant from verifying the plaintiff’s physical condition as well as the reasonableness or necessity of his claimed medical treatment. The plaintiff’s refusal to attend an IME put the defendant in the untenable position of paying the claim without question and without any means by which to measure the validity or necessity of the treatment, or being sued for violating the law. The existence of the prejudice is self-evident.” Id. at 261. This observation is also relevant in this case. Although the first examination was to have occurred more than one month after Chiropractic Care terminated its services, the delay, in these circumstances, is not material. Chiropractic Care has not argued otherwise.